Jones, J.,
dissenting. The decision in this case not only overrules the established legal principles *180 heretofore announced by this court, but is at variance with the principles settled by practically every court in this country. ' The law upon this subject was stated in the syllabus in Frederick, Admx., v. City of Columbus, 58 Ohio St., 538, as follows:
“A municipal corporation is not, in the absence of any statutory provision, liable in damages to one injured by the negligent acts of its fire department, or any of its members.”
The principle there announced, however, was not a new one, for it had already been established in this state in the reported cases of Western College v. City of Cleveland, 12 Ohio St., 375, and Wheeler v. City of Cincinnati, 19 Ohio St., 19. As late as 1909 this principle found approval in Bell v. City of Cincinnati, 80 Ohio St., 1. In the case of Frederick, Admx., v. Columbus, supra, Judge Minshall says at page 548: “The decision in this case is fully supported by the authorities, and the decisions in the other states of the union. There is, in fact, a remarkable unanimity on the subject.”
Upon this all the textbooks are in accord in holding that members of a fire department of a municipality are not agents for whose negligent conduct the city may be held liable. It is stated in 5 McQuillin on Municipal Corporations, Section 2432, that “This rule of non-liability has been followed in many decisions and is well settled. And the municipality is not liable either for acts of commission or acts of omission, unless liability is expressly imposed by statute,” etc.
*181 Mr. Dillon in the fourth volume of his work on Municipal Corporations, Section 1660, states the same rule of nori-liability in the absence of express statute.
Mr. Tiedeman, also, in his’work on Municipal Corporations, Section 333a, states that a municipal corporation is not liable to a person who is run over by a hose carriage on its way to a fire.
Mr. Justice Gray, in the Admiralty case, Workman v. N. Y. City, 179 U. S., 550, 580, there states, as I am content to do, that “The decisions are so] uniform, and treat the point as so well settled, that it is enough to cite them, without stating them in detail.”
What warrant, therefore, is there for pursuing a course so much at variance with the established legal doctrines of this country, and which overrules the well-settled principles of law in this state? Is it a question of public policy? If so, that feature should be addressed to the legislative and not to the judicial department. Frequently the legislature has prescribed liability against counties and cities where but for the legislative action none would exist. If it should be desired that the doors of the public treasuries of these municipalities should be flung wide open at the behest of anyone who conceives that he has been injured by some officer or employe of the municipality while exercising public and governmental functions, the legislature can easily provide a remedy.
Counsel for plaintiff in error say in their brief, “The legislature has not caught up with this spirit of the times, and it is submitted that the courts are *182 not entirely precluded from doing so notwithstanding this neglect of the legislatureThis is an appeal for judicial legislation entirely unwarranted by the constitution. Moreover, the policy of the people of this state'has been engrafted upon our constitution, which now provides that in suits against the sovereign (which in this state constitute the people, who, by their initiative, may establish constitutions and laws) legislative action must first be obtained. The latter clause of Section 16, Article I, provides: “Suits may be brought against the state, in such courts and in such manner as may be provided by law.” This provision did not promulgate any new principle in the jurisprudence of this state. Prior to its adoption in our Constitution of 1912 our courts had held that the state and its subdivisions were not suable without legislative consent, and it was under that principle that the Frederick case, supra, was decided. When, therefore, the people adopted the constitutional provision just quoted, they placed in the organic law of the state the judicial principle of exemption from liability, which theretofore obtained in favor of the sovereign and its various subdivisions when acting for it in a governmental capacity.
In the case of Raudabaugh v. State, 96 Ohio St., 513, all the present judges concurring, it was held that this clause was not self-executing, but that “statutory authority is required as a prerequisite to the bringing of suits against the state.” This then evinces the policy of all the people, that the state and its governmental subdivisions exercising *183 governmental functions in its behalf should not be suable unless the legislature had expressly provided therefor. In this class of cases a city must act through its servants. It is required in the interest of public safety that the municipality provide- police and fire departments". The servants employed in these departments are not acting under the principle of respondeat superior and for the benefit of the city as a corporate entity, but are acting for the entire public. These servants are agents of the entire people, not only of a person who may be injured but of every citizen in the municipality. The employe, therefore, if exercising this governmental function, is the agent of the plaintiff as well as the rest of the community. The corporation in its corporate capacity receives no special benefit, the benefit accrues to the community. It must be conceded that the defendant in this instance, although acting through its fire employe, was exercising a governmental function. That principle is established not only in this state but elsewhere. Its act was not a ministerial one.
“There is a distinction between those powers of a municipal corporation which are governmental or political in their nature and those which are to be exercised for the management and improvement of property.- As to the first, the municipality represents the state, and its responsibility is governed by the same rules which apply to like delegation of power.” City of Cincinnati v. Cameron, 33 Ohio St., 336.
The statutory provisions that a municipal corporation may sue and be sued gives no sanction for *184 imposing liability. It simply means that there may be a suit where there is liability. The statute creates no liability. The county, through its commissioners, may sue and be sued, but no liability accrues from the action of a mob except by legislative authority. Furthermore, that section has long been upon our statute books and it has not escaped the attention of this court, for it has been expressly held in the syllabus of Overholser v. National Home, 68 Ohio St., 236, that “The grant of power to sue and be sued at law and in equity applies to such matters only as are within the scope of the other corporate powers of the defendant, and it does not authorize such corporation to be sued for a tort.”
It was held in Finch v. Board of Education, 30 Ohio St., 37, that the board of education was not liable in its corporate capacity for damages for a tortious act, although the board of education by its charter was declared to be a body politic and corporate in law, with capacity to sue and be sued.
The majority opinion in the case of Workman v. N. Y. City, 179 U. S., 552, has been cited in support of the majority opinion. That was purely an admiralty case, in rem, and as stated by the court was governed entirely by the admiralty law. Had the question arisen under the local laws of any of the states, it is evident that the decision would have been otherwise, although even under the maritime law its application was denied by four dissenting judges, Justices Gray, Brewer, Shiras and Peck-ham. It was conceded in both opinions that the local law was otherwise, but the majority simply *185 applied the admiralty law where it held the city for damages to the extent of the value of the vessel. About the time this case was decided- a federal case under the maritime law arose in the city of Cleveland in this state, and at a time when the local law of non-liability had been well setttled in the Frederick and other cases. This was in 1899. There the federal judge held in the Ohio cas.e that the rule of the maritime law was not based on the relation of master and servant, but rested upon the fact of ownership alone, and that the principle which held the city exempt from liability for the negligent acts of its firemen had no application to the case of a maritime injury, and that the city could be held responsible in a court of admiralty to the extent of the value of the tug owned by the city. Henderson v. City of Cleveland, 93 Fed. Rep., 844.
I have not cited the multitudinous cases reported in other jurisdictions supporting this opinion. These may be found in the citations attached to the various textbooks to which I have referred.
The municipalities of the state are merely agents of the sovereign when they exercise governmental functions, and where 'employes of a fire department, while on their way to a conflagration menacing the city, where the lives of citizens may be imperiled by the loss of a few seconds time, do commit an act of negligence, whether of omission or commission, such act should not cast upon the municipality, in its attempt to allay the conflagration or rescue the citizens, a civil liability, unless it is expresslv imposed upon the municipality by statute.